25CA0620 Peo in Interest of PR 10-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0620
Delta County District Court No. 24JV30025
Honorable Steven L. Schultz, Judge

The People of the State of Colorado,

Appellee,

In the Interest of P.R., V.R., and A.R., Children,

and Concerning D.R.,

Appellant.

JUDGEMENT AND ORDER AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 23, 2025

John F. Baier, County Attorney, Jodie L. Behrmann, Assistant County Attorney, Adriana Hartley, Assistant County Attorney, Delta, Colorado for Appellee

Josie Burt, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect action, D.R. (father) appeals the judgment entered on a jury's verdict adjudicating P.R., V.R., and A.R. (the children) dependent and neglected. Father also appeals the dispositional order adopting a treatment plan. We affirm.

## I.     Background

¶ 2     In the summer of 2024, the Delta County Department of Human Services (the Department) received a series of referrals raising concerns about domestic violence and substance dependence. These referrals were closed with inconclusive findings. However, in August 2024, the Department opened another assessment after mother was charged with driving under the influence while two of the children were in the car. The Department determined that it was unable to create a safety plan with the family and, in September 2024, filed a petition in dependency and neglect, raising concerns about substance dependence and domestic violence.

¶ 3     Father requested an adjudicatory jury trial. After a three-day trial, the jury returned special verdicts finding that the children were dependent or neglected because

- father mistreated or allowed another person to mistreat or abuse them without taking lawful means to stop the mistreatment and abuse and prevent it from happening again, *see* § 19-3-102(1)(a), C.R.S. 2025;

- they lacked proper parental care due to the father's actions or failures to act, *see* § 19-3-102(1)(b);

- their environment was harmful to their welfare, *see* § 19-3-102(1)(c); and

- father failed or refused to provide the children with the care necessary for their health, guidance, or well-being, *see* § 19-3-102(d).

¶ 4 Based on the jury's verdicts, the juvenile court adjudicated the children dependent or neglected and adopted a treatment plan for father that required him to complete mental health and domestic violence evaluations; improve his parenting skills; participate in life skills services; sign releases of information; and submit to regular substance monitoring.

## II. Adjudication

¶ 5 Father first challenges the sufficiency of the evidence supporting the jury's verdict.

## A.    Preservation

¶ 6    The Department urges us not to address father's claim because it contends that father was required to move for post-trial relief to preserve his claim. We are not aware of any such requirement, and the Department does not provide us with any legal support for its assertion that a motion for post-trial relief is required. Rather, it is the Department that bears the sole burden of proving at adjudication, by a preponderance of the evidence, that the children are dependent or neglected. *People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 32. Father consistently asserted that the Department could not and did not meet that burden. Father's assertion is enough to preserve his sufficiency of the evidence claim.

## B.    Standard of Review and Applicable Law

¶ 7    In reviewing whether the evidence is sufficient, we review the record in the light most favorable to the Department, drawing every inference "fairly deducible" from the evidence in favor of the jury's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). We cannot disturb the jury's verdict if sufficient evidence supports it, even if reasonable people could arrive at different conclusions based on the same evidence. *Id.*

3

¶ 8    "The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). "[A]n adjudication may be based not only on current or past harm but also on prospective harm." *People in Interest of G.E.S.*, 2016 COA 183, ¶ 15. In other words, a jury may consider whether it is likely or expected that the child will lack proper parental care or that the child's environment will be injurious to his welfare. *People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16. Such determination may be based on "the parent's past conduct and current circumstances." *Id.* at ¶ 17.

## C.    Analysis

¶ 9    Section 19-3-102(1)(b) provides that a child is considered dependent or neglected if the child does not receive proper parental care due to the parent's actions or omissions. Proper parental care means "the minimum level of care or services and necessities that

are required to prevent any serious threat to the child's health or welfare." CJI-Civ. 41:7 (2025).

¶ 10 The evidence was sufficient to establish subsection (1)(b) based on father's omissions. Father testified that he (1) was concerned about the children being in mother's care but felt his only option was to ask the maternal grandfather to intervene; (2) would not remove the children from mother's care himself due to fear of escalating mother and being charged with domestic violence; and (3) had not seen the children for several months by the time of the adjudicatory trial.

¶ 11 This same testimony was sufficient to establish the basis for adjudication pursuant to section 19-3-102(1)(d) (father failed or refused to provide the children with care necessary for their health, guidance, or wellbeing). *See* CJI-Civ. 41:7 n.3 (referring to subsection (1)(d) as the "companion basis" to subsection (1)(b) and noting that the definition for proper parental care applies to both subsections (1)(b) and (1)(d)).

¶ 12 Based on this conclusion, we need not consider whether the children were also dependent and neglected under subsections (1)(a) and (c). *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29

5

(explaining that "section 19-3-102 requires proof of only one condition for an adjudication"), *aff'd on other grounds sub nom. People in Interest of R.S. v. G.S.*, 2018 CO 31.

### III.    Dispositional Order

¶ 13    Next, father contends that a treatment plan was not necessary, and that the objectives in his treatment plan were inappropriate.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 14    When a child is adjudicated dependent or neglected, the juvenile court must develop a treatment plan designed to "preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required intervention into the family." *People in Interest of K.B.*, 2016 COA 21, ¶ 11; *see also* § 19-3-508(1)(e)(I), C.R.S. 2025 (providing that unless the proposed disposition of a dependency and neglect action is termination of the parent-child legal relationship, the court "shall approve an appropriate treatment plan").

¶ 15    An appropriate treatment plan must relate to the child's needs and be reasonably calculated to render the parent fit within a reasonable period of time.  *People in Interest of M.W.*, 2022 COA 72,

¶ 32. "In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns identified during the assessment of the family." *K.B.*, ¶ 14. Because the purpose of a treatment plan is to address the material issues that are barriers to reunifying children with their parents, it is appropriate for a treatment plan to address those material issues even if the adjudication was not necessarily predicated upon the particular problem the treatment plan seeks to address. *See, e.g., People in Interest of C.L.S.*, 934 P.2d 851, 856 (Colo. App. 1996) ("[T]he specific ground on which the jury [finds] the child to be dependent and neglected [does] not restrict the juvenile court's discretion to formulate a treatment plan in the best interests of the child.").

¶ 16    We review a treatment plan adopted by the juvenile court for an abuse of discretion. *M.W.*, ¶ 32. A court abuses its discretion when its actions are manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Id.* at ¶ 12.

## B.    Analysis

¶ 17    Father's main objection appears to be the necessity of any treatment plan to rehabilitate him.

¶ 18    Except in some limited scenarios not applicable here, a juvenile court is required to adopt an appropriate treatment plan for a parent following a dispositional hearing.  § 19-3-508(1)(e)(I); *People in Interest of Z.P.S.*, 2016 COA 20, ¶ 15.  Because the jury found that each of the children was dependent or neglected, the juvenile court was required to adopt a treatment plan for father that was reasonably calculated to address the concerns raised at the jury trial.  *M.W.*, ¶ 32.  Therefore, the court's adoption of a treatment plan was not an abuse of discretion.

¶ 19    Nor do we discern an abuse of the juvenile court's discretion in adopting the specific elements of father's treatment plan that he contested.  The court found that the treatment plan proposed by the Department was appropriate.  Specifically, the court found that:

- a mental health evaluation was appropriate to determine if mental health services for father were warranted;

- substance dependence in the home was "clearly a concern" that needed to be addressed;

- parenting education, life skills support, and a domestic violence assessment were appropriate given father's history of involvement with the Department; and

- releases of information were necessary to effectuate the purpose of the treatment plan to place the children back in the home.

¶ 20 At the jury trial, the ongoing Department caseworker raised concerns that the children were exposed to substance use and domestic violence. The caseworker, an expert in child welfare and child protection, opined that father failed to protect the children or take accountability for the situation they were in. The family time program coordinator testified that father attended only twelve of the thirty-three scheduled visits with the children and reported that father became upset at family time when the facilitator's guidelines were enforced. Father's refusal to follow the guidelines resulted in the suspension of his family time, which was not reinstated because father failed to engage. Father testified that he had been seeking employment for nine months without success and did not have a driver's license despite recently becoming eligible to get one.

## IV. Disposition

¶ 21 The judgment and order are affirmed.

JUDGE PAWAR and JUDGE YUN concur.